ARABELLA HINKLE

v.

JOHN B. CHAMPION et al.

A testator gave two notes to the defendants and also a second bond and mortgage on certain of his lands to secure the same debt, in which his wife joined. By his will he devised to her other unencumbered lands. After his death the first mortgage was foreclosed, the defendants being made parties therein. The sale left a deficiency due to the defendants on their mortgage.— *Held*, that the acts of 1881 and 1884 applied, and that the widow could restrain the defendants from selling the lands devised to her in order to satisfy the deficiency, until after they had complied with the statutory requirements by proceeding on the bond for the deficiency.

*Mr. C. G. Garrison*, for complainant.

*Mr. H. L. Slape*, for defendants.

BIRD, V. C.

Mrs. Hinkle, a widow, sets up that her husband, by his last will, gave her the use of certain real and personal estate; that he made Champion and Evans his executors; that he had other real estate which was mortgaged to one Shoemaker for $15,000 and to the defendants Champion and Barstow for $10,000; that her husband died before the bond, which the mortgage given to Champion and Barstow was intended to secure, became due; that after his death, and after the last-named mortgage became due, Shoemaker foreclosed his mortgage, making, as by law he should, Champion and Barstow defendants in that suit; and that a decree was rendered for the amount due on the mortgages of Shoemaker and of Champion and Barstow; a sale was had and money enough realized to pay Shoemaker in full and about $38 on the bond of Champion and Barstow.

Mrs. Hinkle further sets forth that Champion and Barstow claim that there is still due to them on said bond the sum of $7,394.98, and says that they insist that the real and personal estate

Hinkle *v.* Champion.

given and devised to her as aforesaid is liable for the balance due, and also claim the right to have it sold for that purpose, and that Champion and Evans, the executors, threaten to sell this real and personal estate to pay and satisfy said deficiency.

Among other things, Mrs. Hinkle relies upon the amendment to an act entitled " An act concerning proceedings on bonds and mortgages," which amendment is found in the laws of 1881 and 1884, and provides that when a bond and mortgage has been or may be given for the same debt, proceedings to collect said debt shall be, first, to foreclose the mortgage, and, if the sale of the mortgaged premises should not realize a sufficient sum to satisfy said debt and costs, then it shall be lawful to proceed on the bond for the deficiency, and that all suits on said bond shall be commenced within six months from the date of the sale. The said amendment further provides that if, after the sale, the person who is entitled to the debt shall recover a judgment in a suit on the bond for any balance, such recovery shall open the foreclosure and sale of said premises, and the person against whom the judgment has been recovered may redeem the property by paying the full amount of money for which the decree was rendered, with interest, provided, that a suit for redemption is brought within six months after the entry of such judgment for the balance of the debt. She asks that the defendants Champion and Evans, the executors, be restrained from selling any of the real or personal estate devised and given to her, until Champion and Barstow shall have complied with the provisions of the statute by bringing their action at law upon the bond, ascertaining the balance due and giving her an opportunity to redeem.

Does the bill present a case within the act so amended? In other words, can Mrs. Hinkle, who is a legatee and devisee as well as mortgagor, avail herself of this act, and compel Champion and Barstow, who were second mortgagees, to proceed under said act? They insist that she cannot, urging that the act only applies to volunteers, that is, to suitors coming in and asking the aid of the court as complainants, and not to defendants, or persons who are brought in by process. I think this is too narrow a view. In a vast majority of cases the act would be

utterly nugatory, if this construction should prevail. In every case where there are second, third or fourth mortgagees, and there should be any deficiency upon a sale, the mortgagor could not claim the privileges intended by the act, in case the first mortgagee should conduct the foreclosure proceedings. Or, in any such case, if the last mortgagee should file the bill, then all the antecedent mortgagees could set up this claim, saying they were not in court voluntarily, that their mortgages were not being foreclosed, and that they were not barred by the statute of their ancient remedy for the deficiency; and that, however much the beneficial designs of the amendment may be thwarted, it does not apply. To my mind, there is no way of avoiding the conclusion that, so far as the act has any force whatever, it must, by its terms, apply to every mortgage that is foreclosed, whether the mortgagee be the complainant or the defendant. In every such case the defendant mortgagee is as effectually foreclosed as though he had taken the initiative.

But it appears that the testator first gave two notes, for $5,000 each, to Champion and Barstow, payable in bank, and gave also these bonds for the same sums and the said mortgage to secure the bonds; and that after his death Champion and Barstow presented these notes to the executors, of whom Champion was one, for payment; and that the claim which they now make against the estate of the testator is on these notes, and not on the bonds. This distinction, it is said, takes the case out of the statute. I am unable to give the act any such interpretation. It is the same indebtedness, whether represented by a bond only, or by a bond and note, or notes, or by bond and book account, or any other binding promise, and whether direct or collateral.

Again, it is said that all of a debtor's estate remains liable, as before, the act only prescribing that the mortgaged premises must be first sold. True, all his estate remains liable; but, plainly, the great object of the statute is to secure to the debtor the full benefit of his estate so mortgaged; to prevent any unfair advantages in his extremity, and to give him another chance, if the mortgagee be not satisfied with what he can make from the sale of the premises, to pay and satisfy all claims against them,

and to redeem them. The statute warns the mortgagee that, if he is not willing to forego the deficiency after a sale, before he can look to the other estate of his debtor he must ascertain the amount still due on his bond within six months after the sale under foreclosure, so that the debtor may, within six months thereafter, file his bill to redeem. This is a plain and natural interpretation of the act. It has a tendency to protect the debtor, without doing the slightest injury to the creditor.

Upon the argument a great deal was said with respect to the "original indebtedness" on the notes, as distinguished from "the indebtedness on the bond and mortgage, which was only collateral," it being claimed that the bond and mortgage created one liability and the notes another, and that the latter are without the statute, and consequently could be pressed to judgment and execution at any time. I cannot agree with this view.

The act under consideration is quite recent in origin. *Allen* v. *Allen, 7 Stew. Eq. 493; Chancellor* v. *Traphagen, 14 Stew. Eq. 369,* may throw some light on the subject.

I will advise that an injunction do issue.